## DESIGNATED TEST CASE

HI-TECH SPORTS, USA, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 94–06–00349

(Decided August 16, 1996)

*Law Offices of George R. Tuttle,* and *Stephen S. Spraitzer,* for Plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney-In-Charge, and *Bruce N. Stratvert,* International Trade Field Office, Civil Division, Dept. Of Justice, Commercial Litigation Branch; *Mark G. Nackman,* United States Customs Service, of counsel, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WALLACH, *Judge:* This matter having come on for trial in San Francisco, California, on the 20th day of March, 1996, the parties having submitted it for decision and judgment after completion of the trial on the 22nd day of March, 1996, the Court having considered the parties' Post-Trial Briefs submitted on the 3rd day of July, 1996, and their Reply Briefs submitted on the 22nd day of July, 1996, and having given due consideration to the testimony of two witnesses for Plaintiff, and four for Defendant, together with due consideration of all stipulated facts and all evidence admitted at trial, the Court, pursuant to CIT Rule 52(a) now finds facts and sets forth its conclusions of law, and enters Judgment for Plaintiff pursuant to these Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1) This action involves classification under the Harmonized Tariff Schedule of The United States (HTSUS) of seven styles of lightweight hiking boots imported into the United States by Plaintiff, Hi-Tech Sports, USA. Those boots are known as the Ranier II, The Midnite, the Gannett Peak II, the Magnum, the Kings Peak II, the Sundance, and the Sierra Lite II.

2) The imported boots were classified by the United States Customs Service (Customs) under HTSUS subheading 6404.19.15.

3) Plaintiff contends that the boots should have been classified under HTSUS subheading 6403.91.60. All classifications were properly protested and all liquidated duties were paid.

4) The imported merchandise consists entirely of boots with combination uppers, consisting of leather and Cordura nylon. They are a lineal descendant of all-leather hiking boots in which a portion of the leather has been replaced with Cordura nylon where such replacement does not affect the structural integrity of the boot, yet reduces its weight and cost.

5) The essential structure of each boot's upper is derived from its leather components which contribute strength and durability to the boot, and provide support to the wearer's foot and ankle. While the evidence in this area was conflicting, the Court found most credible the testimony of Carl Nowak who possessed much more experience and a higher degree of expertise in the area of shoe design and construction and the terminology used in the footwear industry in the United States than any of the other witnesses.

6) The upper is lasted or fastened to the sole by a cold cement process. The only material intentionally cemented to the sole for purposes of lasting is the leather portion of the upper. The cementing of Cordura is sporadic, and is either unintentional or serves only to prevent the Cordura from pulling away from the sole area, and irritating the user's foot. The Cordura is specifically not used for strength or structural purposes, except as it may serve to reinforce the leather against certain stretching forces. The Cordura does not serve to last the uppers to the sole of the boot.

7) Given the style and manner of construction of the boots at issue, if they were constructed without leather they would lack sufficient support, rigidity or strength for their intended use as hiking boots, and they would quickly fall apart in use.

8) The leather portion of the Hi-Tech boots at issue into which eyelet holes are placed serves a greater function than just as a reinforcement or stay for eyelets and is, in fact, an essential structural portion of the boots. Accordingly, that leather portion is more than an eyelet stay and it is not an accessory or reinforcement.

9) The constituent material of the upper of each of the boots at issue (except as set forth below) is a combination of Cordura nylon and leather with leather predominating.

10) The Court specifically finds that the testimony of Defendant's witnesses Eric Merck, Richard Bunch and Eric Francke was not credible, as it related to the central issue of the structural purpose of leather in construction of the boots at issue, or to terminology used in the footwear industry. Those witnesses lacked expertise on those issues.

11) The Court finds that the testimony of Defendant's witness James Sheridan was entitled to some weight but that his failure to closely examine all but one of the styles of boots at issue, and his relative lack of expertise compared to Carl Nowak, made his testimony less credible and insufficient to rebut Mr. Nowak's testimony.

12) The Court finds that the testimony of Plaintiff's witness Terry McNess was entitled to some weight on the origins of Hi-Tech boots,

their uses and the intent of the manufacturer. Mr. McNess lacked expertise on the central issue of structural purposes of leather in the boots and his testimony was disregarded on that issue.

13) Accordingly, and taking into account the stipulation signed by the parties at trial which leaves certain issues uncontested[1], the Court finds as follows regarding the contested issues relating to the imported items. The numbers referenced are those used in the stipulation and the attachments thereto. The following should be included in the ESAU calculation:

a) Ranier II: The exposed areas of A–1, A–2, A–3 and A–4, and the areas of A–1 and A–3 overlapped by C–3 and C–4 above the insole;

b) Midnite: The exposed areas of A–1, A–2 A–3 and A–4, and the areas of A–1, A–2 and A–3 overlapped by C–2 and C–3 above the insole;

c) Gannett Peak II: the exposed areas of A–2 and A–3 and the area A–3 overlapped by C–3 above the insole;

d) Magnum: the exposed areas of A–1, A–2, A–3 and A–4 and the areas of A–1, A–2 and A–3 overlapped by C–2 and C–3 above the insole;

e) Kings Peak II: the exposed areas of A–1, A–2, A–3, A–4 and A–5 and the areas of A–1, A–3 and A–4 and A–5 overlapped by C–2 and C–3 above the insole;

f) Sundance: the exposed areas of A–1(a), A–1(b), A–2, A–5, A–6 and A–8 and the areas of A–1(a), A–1(b), A–5 and A–6 overlapped by C–2 and C–3 above the insole; and

g) Sierra Lite II: the exposed area of A–1, A–2, A–3, A–4 and A–6 and the area of A–1 which is overlapped by C–3 above the insole.

14) If any of these Findings of Fact shall more properly be Conclusions of Law they shall be deemed to be so.

### CONCLUSIONS OF LAW

1) This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a).

2) Customs' factual determinations are entitled to a presumption of correctness. 28 U.S.C. § 2639(a)(1) (1988); *Goodman Mfg. L.P. v. United States*, 69 F.3d 505, 508 (Fed. Cir. 1995). The burden of proving that Customs' determination is incorrect rests with the party challenging it. 28 U.S.C. § 2639(a)(1).

3) Through the testimony of Carl Nowak, and the other evidence introduced at trial, Hi-Tech has met its burden of demonstrating Customs' determination is incorrect.

4) Customs' classification under HTSUS subheading 6404.19.15 covers footwear with uppers of textile materials. Hi-Tech's claimed classification under HTSUS subheading 6403.91.60 covers footwear with uppers of leather.

---

[1] The Parties, by Stipulation, agreed that certain parts of the seven boot styles at issues were accessories or reinforcements. Those included plastic hooks and eyelet stays, rubber kick plates, and areas of overlap or rubber and/or plastic above the insole, metal eyelets, logos, pull tabs, ankle patches, edging/binding, and D-rings. They also agreed that the tongues of the boots in issues would not be included in the External Surface Area of the Upper (ESAU) calculation.

5) Note 4(a) to Chapter 64 HTSUS provides that "the material of the upper shall be taken to be the constituent material having the greatest external surface area, no account being taken of accessories or reinforcements such as ankle patches, edging, ornamentation, buckles, tabs, eyelet stays or similar attachments."

6) The leather portions of the imported boots listed under Finding of Fact 13 are constituent materials of the upper and are not accessories or reinforcements. Classification of the merchandise here at issue can not be completed without determination of the ESAU.[2]

7) If any of these Conclusions of Law shall more properly be Findings of Fact they shall be deemed to be so.

---

[2] Pursuant to stipulation of the parties, they will calculate the actual ESAU for each boot style here at issue following the results of this decision. Following submission of such calculations to this Court, a final Judgment will be entered.

